**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x

In the Matter of THOMAS POMILIO and
STEPHANIE T. POMILIO,


                   Debtors.


------------------------------------------------------------- x

THOMAS POMILIO and
STEPHANIE T. POMILIO,

                   Plaintiffs,

     - against -

MERS, HOMEBRIDGE MORTGAGE BANKERS CORP.
and EMC MORTGAGE CORPORATION,

                   Defendants.

------------------------------------------------------------- x

FOR PUBLICATION

CHAPTER 7


Case No. 809-76399-reg




Adv. Proc. No. 809-8493-reg

## <u>MEMORANDUM DECISION</u>

In this Chapter 7 case, Thomas and Stephanie T. Pomilio (the "Debtors" or "Plaintiffs")

seek judgment by default in their adversary proceeding to "strip off" and avoid the second

mortgage lien on their residence (the "Property") under 11 U.S.C. §§ 506(a) and (d) (hereinafter

references to title 11 of the United States Code will be "Bankruptcy Code").  The defendants,

MERS as nominee for Homebridge Mortgage Bankers Corp. ("Homebridge") and EMC

Mortgage Corp. as servicer for the mortgagee (collectively, the "Defendants") have failed to file

an answer or respond to the Debtors' motion for default judgment.  The Debtors argue that they

are entitled to judgment by default because they have asserted a valid cause of action in their

complaint.  According to the Debtors, § 506(d) confers standing upon a Chapter 7 debtor to

avoid a validly perfected junior mortgage lien where the lien of the first mortgage exceeds the

value of the underlying collateral.  For the reasons set forth below, the Court denies the Debtors'

motion and dismisses the complaint.

### *Facts*

On August 26, 2009 (the "Petition Date"), the Debtors filed a petition for relief under

Chapter 13 of the Bankruptcy Code.  According to an appraisal obtained by the Debtors, the

Property had a value of $275,000 as of July 11, 2009.  The Property is encumbered by a first

mortgage lien held by America's Servicing Company with a principal balance due in the amount

of $302,103.00.  The Property is also encumbered by a validly perfected second mortgage lien

held by the Defendants securing a note in the original principal amount of $78,000.00 ("Second

Mortgage Lien").  On October 14, 2009, the Debtors filed this adversary proceeding seeking to

reclassify any claim filed by the Defendants as unsecured, and seeking to avoid the Second

Mortgage Lien pursuant to 11 U.S.C. §§ 506 (a) and (d).

The complaint was served on the Defendants and the deadline for the Defendants to file

an answer or otherwise respond to the complaint was fixed for November 16, 2009.  An initial

pretrial conference for the adversary proceeding was scheduled for December 2, 2009.  Prior to

confirmation of the Debtors' plan, on November 30, 2009, the Debtors voluntarily converted

their case to a case under Chapter 7, and Kenneth Kirschenbaum, Esq. was appointed as the

Chapter 7 Trustee (the "Trustee").  The pretrial conference in the adversary proceeding was

adjourned to January 11, 2010.

The Defendants failed to timely file an answer and failed to appear at the pretrial

conference on January 11, 2010.  At the pretrial conference, the Court noted the Defendants'

default and directed the Debtors to file a motion for default judgment against the Defendants.

On January 15, 2010, the Trustee filed a report of no assets in the Debtors' case.  On January 28,

2010, the Debtors filed a motion for default judgment in the adversary proceeding, requesting

that the Court grant judgment in favor of the Debtors and against the Defendants.  As requested

by the Court, the Debtors filed a memorandum of law in support of their motion for default

judgment.  To date, the Defendants have not filed an answer to the complaint, nor have they filed

a response to the Debtors' motion for default judgment.  Oral argument on the Debtors' motion

was held on February 22, 2010 and the matter was marked submitted.

### *Discussion*

The Debtors seek judgment against the Defendants claiming that they are entitled to the

relief requested in their adversary proceeding, despite the fact that their case was converted to

Chapter 7 and they are no longer proposing a plan to repay their creditors under Chapter 13.

According to the Debtors, they have standing as Chapter 7 debtors to maintain this avoidance

action because the language in § 506(d) concerning lien avoidance is not limited only to property

which constitute property of the estate.  Therefore, the Debtors argue that if the property in

question is abandoned by the Chapter 7 trustee and no longer constitutes property of the estate, a

Chapter 7 debtor may seek avoidance of a lien secured by the debtor's real property under this

section.  The Debtors also argue that in the seminal case *Dewsnup v. Timm,* 502 U.S. 410, 112 S.

Ct. 773, 116 L. Ed.2d 903 (1992), the Supreme Court did not specifically find that a Chapter 7

debtor lacks standing to avoid a mortgage lien, and therefore the Debtors may continue with this

adversary proceeding notwithstanding the conversion of their case from Chapter 13 to Chapter 7.

In support of their argument the Debtors rely on Bankruptcy Code § 522(f), which confers

standing upon a Chapter 7 debtor to avoid a non-consensual lien that impairs the debtor's homestead exemption, as evidence that Chapter 7 debtors have standing in general to affect liens on their real property.

The Debtors assert that they are entitled to the relief requested in their complaint as a matter of law.  According to the Debtors, the Supreme Court's decision in *Dewsnup* was narrowly written and is not applicable to the issues raised in this adversary proceeding.  The Debtors assert that *Dewsnup* must be read narrowly to apply only to a debtor who seeks to "strip down" a primary mortgage lien encumbering the debtor's real property and does not bar the relief sought by the Debtors in this adversary proceeding which is to "strip off" a wholly unsecured junior lien.  The Debtors rely heavily on a recent decision *In re Lavelle,* No. 09-72389-478, 2009 WL 4043089 (Bankr. E.D.N.Y. Nov. 19, 2009), by Judge Dorothy Eisenberg in which she granted a similar request for relief by Chapter 7 debtors.

### *Analysis*

Before judgment by default may be granted, the Court must determine whether the Debtors' complaint states a proper cause of action.  In *In re Drexler Associates*, 57 B.R. 312 (Bankr. S.D.N.Y. 1986), the Bankruptcy Court for the Southern District of New York enunciated the standard in this Circuit for evaluating an unopposed motion for default judgment:  "Upon a default, the court generally must take the well-pleaded allegations of a complaint as true." *Id.* (*citing* Fed. R. Civ. P. 55(a) and (b); Fed. R. Bankr. P. 7055 and 9014; *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63-64 (2d Cir. 1971), *reversed on other grounds*, 409 U.S. 363, 93 S. Ct. 647, 34 L. Ed.2d 577 (1973)).  "However, the court is not required to accept the legal conclusions and need not agree that the alleged facts constitute a valid cause of action." *Id.*

(*citing Au Bon Pain Corp. v. Artect, Inc*., 653 F.2d 61, 65 (2d Cir. 1981); 10 Alan Wright, et al.,

*Federal Practice and Procedure* § 2688 (2d ed.).  "This court is therefore not be required [sic] to

accept what is essentially a legal conclusion [set forth in the complaint]."  *Id*. (citation omitted).

The relief sought by the Debtors in this adversary proceeding is based on the theory that a

Chapter 7 debtor has the standing to avoid a junior mortgage pursuant to Bankruptcy Code §§

506(a) and (d), and therefore avoidance of the Defendants' second mortgage is permitted as a

matter of law and is warranted in this case.  The Court finds it is appropriate to test whether the

Debtors' complaint states a valid cause of action.  The Court concludes that it does not.

The Court's analysis begins with Bankruptcy Code §§ 506(a) and (d), upon which

sections the Debtors rely and which the Court agrees govern the issues raised in this adversary

proceeding.

Bankruptcy Code § 506(a)(1) provides in pertinent part:

> An allowed claim of a creditor secured by a lien on property in
> which the estate has an interest, or that is subject to setoff under
> section 553 of this title, is a secured claim to the extent of the
> value of such creditor's interest in the estate's interest in such
> property, or to the extent of the amount subject to setoff, as the
> case may be, and is an unsecured claim to the extent that the value
> of such creditor's interest or the amount so subject to setoff is less
> than the amount of such allowed claim.  Such value shall be
> determined in light of the purpose of the valuation and of the
> proposed disposition or use of such property, and in conjunction
> with any hearing on such disposition or use or on a plan affecting
> such creditor's interest.

11 U.S.C. § 506(a)(1).

Bankruptcy Code § 506(d) provides

> To the extent that a lien secures a claim against the debtor that is not an
> allowed secured claim, such lien is void, unless— (1) such claim was disallowed
> only under section 502(b)(5) or 502(e) of this title; or (2) such claim is not an

allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d).

The Supreme Court analyzed these two provisions in depth in *Dewsnup*.  The Supreme Court was called on to resolve a conflict between the Circuit Courts over whether a Chapter 7 debtor could, based on the fair market value of real property, "strip down" the secured creditor's partially secured lien by reducing the amount of the debt to the "secured" portion of the lien and voiding the lien to the extent the lien exceeded the value of the property.

The Supreme Court's ruling turned on the meaning of the words "allowed secured claim" contained in Bankruptcy Code § 506(d).  Did it mean, as urged by the debtors, that if a claim secured by a lien on property exceeded the value of the property, the unsecured portion of the claim was not an "allowed secured claim" and therefore the corresponding lien could be avoided; or did it mean that so long as a claim secured by a lien on property was not disallowed as the result of a claims objection procedure, the corresponding lien could not be avoided?

The Supreme Court considered several arguments raised by both sides in interpreting these sections, including the debtor's argument that Bankruptcy Code "§ 506(a) bifurcates classes of claims allowed under § 502 into secured claims and unsecured claims; any portion of an allowed claim deemed to be unsecured under § 506(a) is not an 'allowed secured claim' within the lien-voiding scope of § 506(d)." *Dewsnup*, 502 U.S. at 414-15. Under this theory, Bankruptcy Code § 506(a) acts as the mechanism by which a claim secured by a lien could be bifurcated into a secured and unsecured claim.  The debtors also

argued in *Dewsnup* that the result was not affected by whether the property had been abandoned by the Chapter 7 trustee and therefore was no longer property of the debtor's estate.  The creditor argued that "§ 506(a) performs the function of classifying claims by true secured status at the time of distribution of the estate to ensure fairness to unsecured claimants.  In contrast, the lien-voiding § 506(d) is directed to the time at which foreclosure is to take place, and, where the trustee has abandoned the property, no bankruptcy distributional purpose is served by voiding the lien." *Id*. at 415.  The creditor advanced another argument, supported by the United States as *amicus curiae,* that so long as the claim had been allowed pursuant to § 502 and was secured by a lien with recourse to the underlying collateral, it could not come within the scope of § 506(d).  *Id*.  According to the creditor and the United States, this interpretation of § 506(d) which requires a determination as to whether the claim is otherwise an allowable claim "ensures that the Code's determination not to allow the underlying claim against the debtor personally is given full effect by preventing its assertion against the debtor's property." *Id*. at 416.  They argued that § 506(d) cannot be used on a stand alone basis to confer standing to avoid a lien that secures a valid claim.  *See id*. at 415- 17.

The Supreme Court agreed with the secured creditor and the United States, and held that "§ 506(d) does not allow the [debtor] to 'strip down' [the creditor's] lien, because [the creditor's] claim is secured by a lien and has been fully allowed pursuant to § 502." *Dewsnup*, 502 U.S. at 417.[1]  Under this interpretation, the words "allowed secured claim" in

---

[1]Pursuant to Bankruptcy Code §502, a timely filed claim is "allowed" if no party in interest objects, or the bankruptcy court makes a determination that the claim is valid, thereby overruling any objection made by a party in interest. 11 U.S.C. § 502.

§ 506(d) are read term-by-term to refer to a claim that is first allowed under § 502, and secured in the sense that the claim is backed up by a lien on the collateral, regardless of the value of the collateral. *Id.* at 416. The Supreme Court found support for this interpretation in the results of its ruling, which would provide that any increase in the value of the property would inure to the benefit of the secured creditor. This was what the parties had bargained for at the outset. *Id.* at 417. The Supreme Court also noted that this interpretation comported with applicable law prior to passage of the 1978 Bankruptcy Act whereby liens passed through bankruptcy unaffected. *Id.* at 417-18. The Supreme Court found no evidence that Congress, in passing the 1978 Bankruptcy Act, intended to grant to a debtor such a broad remedy against allowed claims such as to as to render them "unsecured" without explicitly so providing in the Bankruptcy Code. *Id.* at 420.

The *Dewsnup* Court recognized that in a Chapter 7 case, "'a bankruptcy discharge extinguishes only one mode of enforcing a claim - namely, an action against the debtor *in personam* - while leaving intact another - namely, an action against the debtor *in rem.*'" *Dewsnup*, 502 U.S. at 418 (*quoting Johnson v. Homestate Bank,* 501 U.S. 78, 84, 111 S. Ct. 2150, 2154, 115 L. Ed.2d 66 (1991)). If the debtor in *Dewsnup* was permitted to avoid the lien, the debtor would be extinguishing the creditor's *in rem* rights against the property itself. Such a result would have been contrary to the purpose of Chapter 7, which is to give the debtor a fresh start, not an undue advantage. The Supreme Court's ruling is consistent with the policy that any increase in the value of the property post-petition should be preserved for the benefit of the creditor, which bargained for the mortgage. *See id*. at 417-18.

The Debtors argue that standing is a "non-issue" because (i) the Supreme Court in *Dewsnup* did not find that the debtor lacked standing to avoid the lien, (ii) Chapter 7 debtors have standing to affect non-consensual liens against their property under § 522(f), and therefore debtors must have standing in general to affect liens against their property, and (iii) there is no requirement in the text of § 506(d) that the property sought to be affected must be "property in which the estate has an interest." Presumably, the third argument is based on the fact that this section speaks in terms of avoiding liens which secure claims against the debtor, and not liens against property of the debtor's estate. However, the Debtors miss the point. The question is not whether the Debtors have standing to avoid the Defendant's lien under § 506(d), but whether § 506(d) confers standing upon the Debtors, or any party, to avoid such a lien.[2]

In *Dewsnup*, the Supreme Court specifically recognized that § 506(d) serves the "function of voiding a lien whenever a claim secured by the lien itself has not been allowed." *Dewsnup*, 502 U.S. at 415-16. This function cannot occur unless and until a secured claim is disallowed. The Supreme Court pointed to § 502 as the operative section under which a court determines whether a claim is disallowed. *Dewsnup*, 502 U.S. at 417 ("[W]e hold that § 506(d) does not allow petitioner to "strip down" respondent's lien, because respondents' claim is secured by a lien and has been fully allowed *pursuant to § 502*.") (emphasis added). The Debtors claim that § 506(d) acts as a source of power for the disallowance of the claim, but this argument was impliedly rejected by the Supreme Court

---

[2]This Court makes no determination regarding the rights a Chapter 7 trustee may have under the Bankruptcy Code, which issue is not before this Court.

in *Dewsnup*. *See id.* at 415-17; *Laskin v. First Nat'l Bank of Keystone (In re Laskin)*, 222 B.R.872, 875-76 (B.A.P. 9th Cir. 1998). Courts have concluded that based on the Supreme Court's analysis in *Dewsnup,* § 506(d) does not provide a mechanism to "disallow" a claim. Rather, this section acts to permit the avoidance of liens based on the disallowance of claims secured by such liens during the bankruptcy process. *Laskin*, 222 B.R. at 875-76; *Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 783 (4th Cir. 2001); *Talbert v. City Mortgage Servs. (In re Talbert),* 344 F.3d 555, 561 (6th Cir. 2003). The Supreme Court "implicitly adopted" the analysis that "§ 506(d) confers no standing on anyone" to avoid a lien; it merely "'provides the avoidance consequences of implementing a host of discrete powers conferred in other parts of the Code rather than acting as an avoiding power per se.'" *Laskin*, 222 B.R. at 875 (*quoting Oregon v. Lange*, 120 B.R. 132, 135 (B.A.P. 9th Cir. 1990)). Other courts interpreting *Dewsnup* in this context have reached the same result. *See Ryan*, 253 F.3d at 783 ("Section 506 was intended to facilitate valuation and disposition of property in the reorganization chapters of the Code, not to confer avoiding power on a Chapter 7 debtor.") (*quoting Laskin*, 222 B.R. at 876*)*; *Talbert*, 344 F.3d at 561-62 (quoting *Laskin*, 222 B.R. at 876; and *Ryan*, 253 F.3d at 783; for the same proposition); *In re Cunningham,* 246 B.R. 241, 247 (Bankr. D. Md. 2000) (quoting *Laskin* for the same proposition); and *In re Virello*, 236 B.R. 199 (Bankr. D.S.C. 1999) (*Dewsnup* stands for the proposition that § 506(d) does not confer upon a Chapter 7 debtor the power to strip down liens.).

The Debtors' second argument, which relies on the avoidance powers contained in § 522(f) as evidence that Chapter 7 debtors have standing in general to avoid liens, also fails

to provide a basis for standing in this case.  Section 522(f) specifically confers upon Chapter 7 debtors the authority to avoid certain liens as follows:  "**[T]he debtor may** avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section . . . ."  11 U.S.C. § 522(f) (emphasis added).  The standing conferred upon Chapter 7 debtors is limited to avoidance of non-consensual liens which impair the debtor's applicable exemption, and does not apply to mortgage liens.  The Debtors fail to explain how this statute compels a finding that Chapter 7 debtors have standing in general to avoid a lien for any other purpose.  In fact, the Bankruptcy Code grants to Chapter 7 debtors certain specific powers, such as the power to avoid certain liens under § 522(f) and the power to redeem personal property under § 722.  However, the Court cannot extrapolate from these statutes a general right by a Chapter 7 debtor to avoid liens.

The Debtors' third argument appears to be based on the premise that whether or not the property which is subject to the lien has been abandoned by the Trustee, the Debtors have standing to bring this action.  The Debtors draw this conclusion because there is no requirement in the text of § 506(d) that the property be "property of the estate."  This argument does not provide a basis for concluding that the Debtors have standing to bring this action because § 506(d) does not even address the type of property at issue.  Rather, this section turns on whether claims against the debtor have been allowed or disallowed.  Without the occurrence of a prior allowance process, a lien cannot be avoided under this section.[3]

---

[3]The Debtors are correct that the *Dewsnup* Court did not rule on whether abandonment of the property by the Chapter 7 trustee affected the debtor's right or standing to avoid a lien on

The Court is aware that in the *Lavelle* decision, Judge Eisenberg recently concluded that based on a plain reading of § 506, the rationale of *Dewsnup* should not be extended to bar a Chapter 7 debtor from seeking to avoid a junior mortgage lien where the value of a first priority lien exceeded the value of the real property. *Lavelle* distinguishes *Dewsnup* by concluding that there is no specific language in the decision which prevents the Court from finding that in a case under Chapter 7 a wholly unsecured junior lien can be "stripped off." While this is a well reasoned argument which finds support in a number of scholarly articles discussing *Dewsnup*, this Court is nevertheless persuaded that it is constrained to apply *Dewsnup* to the facts of the case before this Court. The Fourth and Sixth Circuits and the Ninth Circuit Bankruptcy Appellate Panel agree that *Dewsnup* applies to bar a Chapter 7 debtor from avoiding an allowed, secured mortgage lien against the debtor's property, whether the mortgage lien is partially secured or wholly unsecured. *Talbert,* 344 F.3d at 555-56; *Ryan,* 253 F.3d at 779; *Laskin*, 222 B.R. at 875-76.   In each of these cases, the issue before the court was whether the reasoning of the Supreme Court in  *Dewsnup* extended to bar a Chapter 7 debtor from avoiding a junior lien holder's claim solely on the basis that it is wholly unsecured.  According to the Fourth Circuit, "[f]ollowing the Supreme Court's teachings in *Dewsnup,* as we must, we discern no principled distinction to be made between the case *sub judice* and that decided in *Dewsnup.*  The Court's reasoning in *Dewsnup* is equally relevant and convincing in a case like ours where a debtor attempts to strip off, rather than merely strip down, an approved but unsecured lien." *Ryan*, 253 F.3d at

_____

such property.  The issue regarding standing does not turn on whether the property is "property of the estate" or whether it has been abandoned, but turns on whether § 506(d) gives a Chapter 7 debtor the right or standing to avoid a lien on the debtor's property.

782. As recognized by the Ninth Circuit Bankruptcy Appellate Panel in *Laskin,* the reasons cited by the Supreme Court for its holding in *Dewsnup,* that liens pass through bankruptcy unaffected, and that the bargained-for consensual lien granted by the mortgagor to the mortgagee contemplated that the mortgagee's lien stays with the property until its disposition at foreclosure or sale, should not change based on the value of the collateral in relation to the debt. *Laskin*, 222 B.R. at 876. In *Talbert*, the Sixth Circuit concluded that under the reasoning of *Dewsnup,* if a claim is not disallowed under § 502 and is secured by a valid junior lien, then the debtor may not utilize §§ 506(a) and (d) to avoid the junior lien, regardless of whether the amount of the senior lien exceeds the value of the property. *Talbert*, 344 F.3d at 561.

These same courts have concluded that *Dewsnup* does not apply to reorganization chapters which have claims allowance processes. In Chapter 13, a debtor may propose a plan which pursuant to § 1322(b)(2) modifies "the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ." 11 U.S.C. § 1322(b)(2). "Secured" in § 1322(b)(2) is defined by § 506(a), while "secured" in § 506(d) is not. *Laskin*, 222 B.R. at 875. Furthermore, § 1325(a)(5)(B)(ii) requires that claims be determined in the confirmation process, which does not exist in a Chapter 7 case. The court in *Laskin* also refused to apply Chapter 13 case law regarding lien "strip-off" to a Chapter 7 case because "[t]hose authorities do not support the free-standing lien avoidance sought [by the Chapter 7 debtor]." *Laskin*, 222 B.R. at 875. In Chapter 11 cases, § 1123(b)(5) permits a plan proponent to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is

the debtor's principal residence . . . ."  In addition, § 1129(b) contemplates the modification of lien rights of secured creditors in the context of confirmation of a Chapter 11 plan.  There is no such similar right found in Chapter 7 because Chapter 7 is not a reorganization chapter.  As there is no need to undergo a claims allowance process for the purposes of proposing and confirming a plan which pays creditors, there is no corresponding right for a Chapter 7 debtor to avoid liens.  *See Talbert,* 344 F.3d at 561-62 (The purpose of § 506 is to provide a mechanism for valuation and disposition of property in the reorganization chapters, not for use by a Chapter 7 debtor).  This Court finds the reasoning of each of these cases to be persuasive.  The holding of *Dewsnup* applies to the facts of this case and bars the Debtors from obtaining the relief they seek in this adversary proceeding.

### *Conclusion*

For the reasons set forth above, the Debtors' motion is denied and the adversary proceeding shall be dismissed.  An order consistent with this Memorandum Decision shall be entered forthwith.

Dated: Central Islip, New York
　　　　February 23, 2010　　　　　By: ***/s/ Robert E. Grossman***_____
　　　　　　　　　　　　　　　　　　　Robert E. Grossman
　　　　　　　　　　　　　　　　　　　United States Bankruptcy Judge